# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | In and for Kent County |
| | ) | ID. No. 1108023033A |
| v. | ) | |
| | ) | RK11-09-0249-01 |
| RUSSELL M. GRIMES, | ) | RK11-09-0250-01 |
| | ) | RK11-11-0244-01 through |
| Defendant. | ) | RK11-11-0249-01 |
| | ) | RK11-11-0260-01 |

## COMMISSIONER'S REPORT AND RECOMMENDATION

### Upon Defendant's Motion for Postconviction Relief
### Pursuant to Superior Court Criminal Rule 61

Susan G. Schmidhauser, Esq., Deputy Attorney General, Department of Justice, for the State of Delaware.

Russell M. Grimes, *Pro se.*

FREUD, Commissioner
July 23, 2019

On May 28, 2013, the Defendant Russell M. Grimes ("Grimes") was found guilty following a jury trial, during which he represented himself *pro se,* to one count of Robbery in the First Degree; one count of Possession of a Firearm During Commission of a Felony; one count of Possession of a Firearm by a Person Prohibited; and five counts of Reckless Endangering. He was acquitted of six counts of Aggravated Menacing and one count of one count of Conspiracy in the First

Degree. His co-defendant William S. Sells ("Sells") was also found guilty at the same trial of Robbery in the First Degree and Possession of a Firearm During the Commission of a Felony with several other charge including Aggravated Menacing. A timely appeal was filed and the Delaware Supreme Court remanded the matter back to this Court due to errors made during the jury selection.

During Grimes's first trial the State moved to amend the Grand Jury's Indictment to change the name of the Robbery victim from Rose Marie Hase ("Ms. Hase") to Vicki Ebaugh ("Ms. Ebaugh"). Both women were tellers at the bank and both had been listed as victims of Aggravated Menacing during the course of the Robbery during which the robbers had threatened all the tellers. The evidence at trial showed that Ms. Ebaugh was in fact the teller from whom the money was taken during the robbery. The Court allowed the amendment. At his second trial the amended Indictment was again used without any objection by Grimes, who again proceeded *pro se*. At the conclusion of the second trial the jury again found Grimes guilty of one count of Robbery in the First Degree; one count of Possession of a Firearm During Commission of a Felony; one count of Possession of a Firearm by a Person Prohibited; one count of Conspiracy in the Second Degree and five counts of Reckless Endangering on November 16, 2016.[1] The State moved to declare Grimes an Habitual Offender. The Court declared Grimes an Habitual Offender and sentenced him to a total of sixty-four years at Level V incarceration with credit for time served suspended after fifty-three years, fifty of which were pursuant to 11 *Del.*

---

[1] The delay in the second trial was due in large part to Grimes absconding while out on bond.

*C.* § 4214(c).

Grimes filed a timely *pro se* appeal to the State Supreme Court in which he alleged that because the jury acquitted him of the lesser included offense of Aggravated Menacing at his first trial that the conviction for Robbery in the First Degree at his second trial constituted a violation of the Double Jeopardy clause of the United State Constitution. The Supreme Court denied Grimes's appeal and affirmed his conviction and sentence.[2] Next, Grimes filed a motion for Postconviction Relief, *pro se,* on August 3, 2018 and an accompanying memorandum in support. Subsequently, Grimes amended his motion.

## FACTS

Following are the facts as set forth by the Delaware Supreme Court in its opinion in Grimes's co-defendant Sell's initial appeal from their joint trial:

> On August 26, 2011, a masked man entered the First National Bank of Wyoming in Felton, Delaware (the "Bank"), displayed what appeared to be firearm, ordered the Bank manager to exit her office, and told the tellers to empty the cash drawers. During the robbery, the man jumped over a counter in the Bank and blood was later discovered on the ceiling above that counter.[FN4] The man placed the money from the cash drawers into a satchel and exited the Bank. These events were recorded on the Bank's security cameras. The money taken from the Bank contained dye packs, a security device designed to stain money taken from the Bank, and "bait bills," bills for which the bank had recorded and maintained serial

---

[2] *Grimes v. State*, 188 A.3d 824 (Del. 2018).

numbers in case of theft. Over $54,000 was taken from the Bank.

When the suspect exited the Bank, he entered a black SUV. An employee of the Bank who ran outside during the robbery testified that she saw the SUV driving away from the Bank and that the SUV was emitting "pink, red smoke" which indicated to her that the dye pack had gone off. Officer Keith Shyers of the Harrington Police Department ("Officer Shyers") also observed the SUV, and testified that he saw a black male "hanging out [of] the window" of the SUV and a "red poof" that "looked like some kind of paint."

Because the vehicle was traveling at a high rate of speed and he thought something was suspicious, Officer Shyers turned around and began following the SUV. Officer Shyers then heard a call that went out over the radio dispatch for a robbery that had just occurred at the Bank. Officer Shyers was the first officer to begin pursuing the car and was the lead vehicle for much of the pursuit. A few minutes into the pursuit, the SUV stopped at an intersection and the passenger got out of the vehicle and began firing shots at the pursuing officers. Officer Shyers testified that he was approximately 20 to 30 feet from the passenger and theat the passenger was a black male wearing a grey hooded sweatshirt.

The passenger then got back in the SUV and a high-speed pursuit ensued involving officers from the Delaware State Police, Harrington Police Department, and Felton Police Department. At various points during the pursuit, the passenger popped up through the sunroof and fired shots at the officers. The left rear tire of Officer Shyer's vehicle

4

was shot and he abandoned his vehicle and jumped into another officer's car to continue the pursuit.

Corporal Scott Torgerson, an assistant shift supervisor for the Delaware State Police ("Corporal Torgerson"), who was driving a fully-marked Crown Victoria, took over as the lead vehicle in the pursuit. The passenger continued to fire shots at the officers from the sunroof. The SUV drove around spike strips that had been set in its path and Corporal Torgerson continued to pursue it. Shortly thereafter, the driver lost control of the SUV and it came to rest in a ditch with its back tires stuck. The driver and the passenger both exited the SUV and began fleeing and Corporal Torgerson fired shots at them. The driver of the SUV was shot in the leg by Corporal Torgerson and was later identified as [Russell] Grimes. The passenger of the vehicle escaped on foot.

The SUV was registered to Sophia Jones ("Jones"). Jones was Sells' girlfriend. Jones and Sells shared an apartment and had a child together. Jones testified that she did not know who was driving the SUV at the time of the bank robbery because she had not seen the SUV in over a week, but that the last time she had seen the SUV, Sells had been driving it. She testified that Sells had the SUV because he was trying to sell it.

After the robbery, police officers searched the apartment that Jones and Sells shared and asked her questions. Jones gave the officers Sells' cell phone number and told them that Sells' best friend was named "Russell." On August 28, Jones contacted the police and inquired about getting her SUV back. The officers then asked Jones if Sells had contacted her, and she replied that he had called her,

inquired about his son, and asked whether the police had been to the apartment because he had heard about the SUV being in an incident with Grimes.

On September 6, 2011, Sells was found barricaded in a room at the Shamrock Motel. The SWAT team deployed tear gas grenades, smoke grenades, stringball grenades, [FN5] and stun grenades into the room through a small bathroom window that opened to the outside in order to get Sells to exit the room, but those efforts were unsuccessful. The officers used so many of the various types of grenades that Sergeant Ennis testified that he had "no idea how [Sells] stayed" in the room. [FN6]

When the standoff ended and Sells was taken into custody, United State currency was collected from three separate locations of the motel room: in the living room, in the bathroom, and outside the motel underneath the bathroom window. Many of the bills that were collected as evidence at the motel were torn and burned. Some of the money that was collected in the living room area of the motel room also appeared to be stained with a red dye. Sells' defense counsel elicited testimony on cross examination that the red stains on the currency could have been caused by some of the explosives, which discharge red dye. A large red stain also appeared on one of the walls of the motel room. Around 50 bills were collected from the motel room ranging in denominations from $1 to $50. The total value of the money collected was at most $769.[FN7]

Witnesses testified that Sells had used $475 of money with a red dye stain to purchase cigarettes, and that 34 of those bills matched bait bills that were taken from the Bank. One of Sells' female companions also testified that Sells used

$3,500 in cash to purchase a car and that some of that money had red on it. That money was never recovered.[3]

FN 4 The testimony of a Senior Forensic DNA Analyst revealed that the samples taken from inside the Bank were not consistent with either Grimes or Sells.

FN 5 Stringball grenades were described by Sergeant Ennis as "a rubber softball [that] has small little tiny rubber balls that are inside of it; when it explodes, the rubber balls fly around."

FN 6 The officers completely exhausted their supply of grenades and a helicopter had to deliver additional grenades.

FN 7 Detective Daddio testified that $31 was found outside the motel room, the living area had $44 and one-half of a $50 bill. In the bathroom there was $418 recovered and an additional $226 in partial bills.

## GRIMES'S CONTENTIONS

In his motion, Grimes raised three grounds for relief:

| | |
|---|---|
| Ground one: | Illegally Amended Indictment.<br>Trial judge during first trial amended indictment on the 3rd day in error creating a myriad of structural errors that continued through out the second trial. |
| Ground two: | Double Jeopardy. |

---

[3] *Sells v. State*, 109 A.3d 568, 571-572 (Del. 2015).

When the trial court amended the indictment it created double jeopardy in violation of state and federal constitutions.

Ground three: Due Process right to fair trial.
By amending the indictment in violation of Superior Ct. Rules the trial court carried on an illegal prosecution denying defendant a fair trial as the error carried on through the second trial.

On January 11, 2019 Grimes amended his motion to add a fourth ground:

Ground four: Subject Matter Jurisdiction.
By substantively and constructively amending the indictment other than by the grand jury that returned it the Superior Court lost jurisdiction and thereby sentenced movant illegally as to Robbery 1st and its companion PFDCF charge as it did not have jurisdiction as to these offenses.

## DISCUSSION

Under Delaware law, the Court must first determine whether Grimes has met the procedural requirements of Superior Court Criminal Rule 61(i) before it may consider the merits of the postconviction relief claims.[4] Under Rule 61, postconviction claims for relief must be brought within one year of the conviction

---

[4] *Bailey v. State*, 588 A.2d 1121, 1127 (Del. 1991).

becoming final.[5] Grimes' motion was filed in a timely fashion, thus the bar of Rule 61(i)(1) does not apply to the motion. As this is Grimes's initial motion for postconviction relief, the bar of Rule 61(i)(2), which prevents consideration of any claim not previously asserted in a postconviction motion, does not apply either.

Grounds for relief not asserted in the proceedings leading to judgment of conviction are thereafter barred unless the movant demonstrates: (1) cause for relief from the procedural default; and (2) prejudice from a violation of the movant's rights.[6] The bars to relief are inapplicable to a jurisdictional challenge or "to a claim that satisfies the pleading requirements of subparagraph (2)(i) or (2)(ii) of subdivision (d) of Rule 61.[7] To meet the requirements of Rule 61(d)(2) a defendant must plead with particularity that new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted[8] or that he pleads with particularity a claim that a new rule of constitutional law, made retroactive to cases on collateral review by the United State or Delaware Supreme courts, applies to the defendant's case rendering the conviction invalid.[9] Grimes's motion pleads neither requirement of Rule 61(d)(2).

Grimes's second ground for relief alleging a Double Jeopardy violation is

---

[5] Super. Ct. Crim. R. 61(i)(1).

[6] Super. Ct. Crim. R. 61(i)(3).

[7] Super. Ct. Crim. R. 61(i)(5).

[8] Super. Ct. Crim. R. 61(d)(2)(i).

[9] Super. Ct. Crim. R. 61(d)(2)(ii).

9

simply a restatement of the argument he previously raised in his direct appeal. Rule 61(i)(4) bars any ground for relief that was formerly adjudicated unless reconsideration of the claim is warranted in the interest of justice.[10] Grimes raised this claim before on direct appeal and the Supreme Court found it meritless. Grimes has made no attempt to argue why reconsideration of this claim is warranted in the interest of justice. The interest of justice exception of Rule 61(i)(4) has been narrowly defined to require that the movant show that "subsequent legal developments have revealed that the trial court lacked the authority to convict or punish" him.[11] Grimes has made no attempt to demonstrate why this claim should be revisited. This Court is not required to reconsider Grimes's claims simply because they are "refined or restated."[12] For this reason, this ground for relief should be dismissed as previously adjudicated under Rule 61(i)(4).

Grimes's remaining grounds for relief all essentially allege that the Court erred in allowing the State to amend the Indictment during his first trial which allegedly caused "structural errors" in his second trial and somehow caused this Court to lack jurisdiction. None of these claims have been previously adjudicated. Consequently they fall into the bar of Rule 61(i)(3). Grimes is barred by Rule 61(i)(3) from raising them absent a clear demonstration of cause for his neglect and prejudice. In this case,

---

[10] Super. Ct. Crim. R. 61(i)(4).

[11] *Maxion v. State*, 686 A.2d 148, 150 (Del. 1996) (quoting *Flamer v. State*, 585 A.2d 736, 746 (Del. 1990)).

[12] *Riley v. State*, 585 A.2d 719, 721 (Del. 1990).

Grimes represented himself at trial and on appeal and thus does not have the standard argument made in most postconviction motions: the claim that their attorney was ineffective. Grimes's claims in his postconviction motion could have been raised at his initial trial, at his second trial and on direct appeal. It is clear that he was aware of any alleged error with the indictment at least during his second trial and when he filed his direct appeal from that conviction. Nevertheless, he failed to raise the issue concerning the amendment of the Indictment during his first trial and use of the same amended indictment during his second trial. He has made no attempt whatsoever to establish even the remotest cause for his failure to do so, nor has he demonstrated any prejudice arising out of the alleged violation. As such, these claims should be dismissed as procedurally barred by Rule 61(i)(3).

Grimes attempts to salvage his claims with a "hail Mary pass" in his amended motion where he claims the amended Indictment somehow divested this Court of jurisdiction. Consequently, he argues by alleging a jurisdictional flaw he escapes the procedural requirements. Unfortunately, for Grimes he is sorely mistaken. Not only did the amended indictment not divest this Court of jurisdiction but his underlying argument is incorrect as well. As noted by the State, Grimes case is directly on point with the Delaware Supreme court's ruling in *Coffield v. State.* [13] In *Coffield,* the State moved to change the name of the victim in the Robbery indictment just prior to trial. The Court however, did not rule on that motion until the close of the State's case. The Delaware Supreme Court determined that "the amendments neither charged

---

[13]  794 A.2d 588 (Del. 2002).

11

separate offenses nor worked discernable prejudice on the Appellant, and therefore fell within the bounds of the trial judge's discretion under Superior Court Rule 7(e)."[14]

In Grimes's first trial, the State also moved to amend the indictment at the beginning of the trial and the Court permitted the amendment well prior to the close of the State's case. Grimes alleges that changing the victim's name changes an essential element of the crime. However, the *Coffield* court determined that the victim's name is not an essential element of the crime of Robbery in the First Degree. The *Coffield* court also determined that the original indictment did provide adequate notice since both the originally named victim and the victim in the amended indictment were both present during the robbery. Therefore, the defense was aware that both of these witnesses could be called as witnesses and the defense had equal access to both of them. That is factually the same as in this case with Grimes. Both Ms. Ebaugh and Ms. Hase were listed as victims of the Aggravated Menacing charges which occurred at the same time as the robbery. The only issue was who the money was taken from. Grimes had an opportunity to question both of the witnesses or call them as witnesses in his case.

Furthermore, Grimes has failed to recognize that the indictment was amended during the first trial in May 2013. He was tried, convicted and the conviction was overturned. During the second trial in November 2016, no additional amendments occurred. Prior to and during the second trial, Grimes never objected to the

---

[14] *Coffield* at 590.

amendment of the indictment which had occurred years earlier. He also never sought to introduce any testimony from Ms. Hase. She testified at the first trial, as a witness to the robbery and as a victim of the Aggravated Menacing. However, since Grimes was not convicted of the Aggravated Menacing charges after the first trial, Ms. Hase did not testify during the second trial. However, Ms. Ebaugh testified in both trials. While Grimes alleges that his trial strategy was effected by the amendment of the indictment, he has not offered any such proof.

Grimes also alleges that his due process rights were violated because the indictment that was amended in the May 2013 trial was used in the November 2016 trial. There was no objection from Grimes prior to or during the November 2016 trial. Therefore, any objection has been waived by his failure to raise the issue during the second trial. Additionally the amendment of the indictment was lawful based on *Coffield*.[15]

Grimes alleges that the Court did not have subject matter jurisdiction since the indictment was amended to change the name of the alleged Robbery in the First Degree victim. Grimes relies on *U.S. v. Williams*[16] where the court held that when the indictment was amended in a matter of substance, that the indictment expires and the court could not impose a sentence, even when the parties agreed to the amendment. The crux of Grimes's argument relies on a finding that amending the indictment, to reflect the name of the bank employee from whom the money was forcibly take, is a

---

[15] 794 A.2d 588 (Del. 2002).

[16] 412 F.2d 625 (3rd Cir. 1969).

13

bank employee to another is a substantial change and thus voids the indictment. As noted above *Coffield v. State*[17] which is directly on point with the facts in the Grimes case, clearly holds that the change of a victim's name under the circumstances of this case is not a substantive change. The Delaware Supreme court determined that "the amendments neither charged separate offenses nor worked discernable prejudice on the Appellant, and therefore fell within the bounds of the trial judge's discretion under Superior Court Rule 7(e)."[18] Clearly the amendment of the indictment was proper and permissible. The Trial Court did not err when it granted the State's motion to amend the indictment during the first trial.

Grimes's attempt to justify his claims at this late date by making broad accusations fails. A careful reading of Grimes's arguments, the State's well-reasoned reply, and the transcript of this case, reveal that Grimes's arguments are meritless and based on supposition, conjecture, and innuendo. Grimes has failed to overcome in any way the bars of Rule 61. As such, his motion should be dismissed.

---

[17] 794 A.2d 588 (Del. 2002).

[18] *Coffield* at 590.

14

## CONCLUSION

After reviewing the record in this case, it is clear that Grimes has failed to avoid the procedural bars of Superior Court Criminal Rule 61(i). Consequently, I recommend that Grimes's postconviction motion be ***dismissed*** as procedurally barred by Rule 61(i)(3) and (4) for failure to prove cause and prejudice, and as previously adjudicated.

/s/ Andrea M. Freud
Commissioner

AMF/dsc
oc:   Prothonotary